IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISON

PNC BANK, N.A., as successor-in-interest
by merger to RBC BANK (USA) f/k/a RBC CENTURA
BANK,

    Plaintiff,

v.                                       Case No. 6:14-cv-598-ORL-28-TBS

M.D.K. HOLDINGS, LLC, a Florida limited liability
corporation, MAXINE MONCRIEFFE, D.D.S., P.A.,
a Florida professional association, MAXINE
MONCRIEFFE-BAYLISS, individually, and
ANDREW BAYLIS, individually, WOODLAND LAKES
PROFESSIONAL CENTER CONDOMINIUM
ASSOCIATION, INC., a Florida non-profit corporation,

    Defendants.
_____/

## VERIFIED COMPLAINT

    Plaintiff, PNC Bank, N.A., as successor-in-interest by merger to RBC Bank (USA), f/k/a RBC Centura Bank (the "Bank"), hereby sues M.D.K. Holdings, LLC ("M.D.K."), Maxine Moncrieffe, D.D.S., P.A. ("D.D.S."), Maxine Moncrieffe-Baylis ("Moncrieffe"), and Andrew Baylis ("Baylis"), all of whom are collectively referred to herein as the "Obligors," and Woodland Lakes Professional Center Condominium Association, Inc. (the "Association"), and alleges:

### A.    PRELIMINARY ALLEGATIONS

1.    The Bank is a national banking association as successor-in-interest by merger to RBC Bank (USA) f/k/a RBC Centura Bank, doing business in the Middle District of Florida, is chartered under the laws of the United States in the State of Delaware, and has its principal place of business in the Commonwealth of Pennsylvania. The Bank's main office, as stated in its

Articles of Association, is located in Wilmington, Delaware. The Bank is duly authorized to conduct business in the State of Florida.

2. M.D.K. is a Florida limited liability company doing business in the Middle District of Florida with its principal place of business at 3217 Waterbridge Court, Kissimmee, Florida 34744. M.D.K. has two (2) members, Moncrieffe and Baylis. Both members of M.D.K. are citizens of Florida. Therefore, M.D.K. is a citizen of Florida

3. D.D.S. is a Florida professional association doing business in the Middle District of Florida with its principal place of business at 10843 Dylan Loren Circle, Orlando, Florida 32825.

4. Moncrieffe is a citizen of Florida residing in or doing business in the Middle District of Florida.

5. Baylis is a citizen of Florida residing in or doing business in the Middle District of Florida.

6. The Association is a Florida non-profit corporation doing business in the Middle District of Florida with its principal place of business at 3595 W. Lake Mary Boulevard, Suite B, Lake Mary, Florida 32746.

7. Pursuant to Title 28 of the United States Code § 1332(a)(1), and other applicable law, jurisdiction over this cause exists.

8. Pursuant to Title 28 of the United States Code § 1391(a), venue is proper in the Middle District of Florida.

9. As to each cause of action set forth in this verified complaint (the "Complaint"), this is an action wherein the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

10. With respect to each cause of action set forth in the Complaint, this is an action to recover damages pursuant to certain agreements executed, delivered, and/or defaulted upon in the Middle District of Florida, and to foreclose real and personal property located in the Middle District of Florida.

11. With respect to each count set forth in this Complaint, all requirements and conditions precedent to the bringing of this action have been satisfied, performed, or waived.

12. With respect to each cause of action set forth in this Complaint, the Bank has retained the undersigned law firm as counsel of record herein and its Maryland-based counsel, and has agreed to compensate and reimburse them for services rendered and costs incurred in connection with the enforcement of its rights and remedies as more fully set forth below. Pursuant to applicable contracts and statutes, Obligors are obligated to reimburse the Bank.

13. With respect to each cause of action set forth herein, the Obligors have defaulted pursuant to the First Obligation, loan number 605433724, the Second Obligation, loan number 605434572, and the Third Obligation, loan number 605434588 (together the "Obligations"), owed by the Obligors to the Bank; the Obligations are hereby again accelerated and demanded, to the extent necessary and required, by and through the filing of the Complaint.

### B. SUBSTANTIVE ALLEGATIONS

14. The Bank and the Obligors are parties to a lending relationship evidenced by a series of loan, guaranty, security, and perfection documents, (collectively, the "Loan Documents"). For purposes of this Complaint, the Loan Documents are respectively referred to herein as the "First Loan Documents," the "Second Loan Documents," and the "Third Loan Documents." The First, Second, and Third Loan Documents include the following documents:

**First Loan Documents:**

    a.    "Promissory Note," executed and delivered by M.D.K. to RBC Centura Bank, on or as of May 29, 2007, in the original principal amount of $900,000, a copy of which is attached hereto as Exhibit "A";

    b.    "Mortgage," executed and delivered by M.D.K. to RBC Centura Bank, on or as of May 29, 2007, evidencing the Bank's lien and security interest in real property located in Orange County, Florida (the "Mortgaged Property"), having been perfected by recording as Instrument # 20070351633, in the Official Records of Orange County, Florida, a copy of which is attached hereto as Exhibit "B";

    c.    "Commercial Guaranty" executed and delivered by Moncrieffe to RBC Centura Bank, on or as of May 29, 2007, a copy of which is attached hereto as Exhibit "C";

    d.    "Change in Terms Agreement," executed and delivered by M.D.K. to RBC Bank (USA), on or as of June 24, 2008, a copy of which is attached hereto as Exhibit "D";

**Second Loan Documents:**

    e.    "Promissory Note" executed and delivered by D.D.S. to RBC Centura Bank, on or as of June 12, 2007, in the original principal amount of $100,000, a copy of which is attached hereto as Exhibit "E";

    f.    "Commercial Guaranty" executed and delivered by Moncrieffe to RBC Centura Bank, on or as of June 12, 2007, a copy of which is attached hereto as Exhibit "F";

    g.    "Change in Terms Agreement," executed and delivered by D.D.S. to RBC Bank (USA), on or as of July 3, 2008, a copy of which is attached hereto as Exhibit "G";

    h.    "Change in Terms Agreement," executed and delivered by D.D.S. to RBC Bank (USA), on or as of August 11, 2009, a copy of which is attached hereto as Exhibit "H";

    i.    "Commercial Security Agreement," executed and delivered by D.D.S. to RBC Centura Bank, on or as of August 11, 2009, evidencing the Bank's lien and security interest in all inventory, Chattel paper, Accounts, Equipment and General Intangibles, all accessions, additions, replacements, and substitutions relating to any of the foregoing including

insurance, general intangibles and account proceeds of D.D.S. (the "First Personal Property"), a copy of which is attached hereto as Exhibit "I";

**Third Loan Documents:**

- j. "Promissory Note," executed and delivered by D.D.S. to RBC Centura Bank, on or as of September 26, 2007, in the original principal amount of $200,000, a copy of which is attached hereto as Exhibit "J";

- k. "Commercial Security Agreement," executed and delivered by D.D.S. to RBC Centura Bank, on or as of September 26, 2007, evidencing the Bank's lien and security interest in all inventory of D.D.S. as more fully in described therein (the "Second Personal Property"), a copy of which is attached hereto as Exhibit "K";

- l. "Change in Terms Agreement," executed and delivered by D.D.S. to RBC Bank (USA), on or as of November 17, 2008, a copy of which is attached hereto as Exhibit "L";

- m. "Change in Terms Agreement," executed and delivered by D.D.S. to RBC Bank (USA), on or as of February 12, 2009, a copy of which is attached hereto as Exhibit "M";

- n. "Commercial Guaranty" executed and delivered by Baylis to RBC Bank (USA), on or as of August 11, 2009, a copy of which is attached hereto as Exhibit "N";

**Common Loan Documents:**

- o. "Forbearance Agreement," executed and delivered by the Obligors to RBC Bank (USA) on or as of July 18, 2011, a copy of which is attached hereto as Exhibit "O."

15. Pursuant to the terms of the Forbearance Agreement, Baylis and Moncrieffe (together, the "Guarantors") guaranteed, among other things, the payment of principal and interest, costs of collection and all other amounts due under the Loan Documents.

16. The Obligations are secured by the First Secured Property and the Second Secured Property (together the "Secured Property") and the Mortgaged Property.

17. The Obligors have defaulted on the Obligations by failing to pay amounts due and owing, pursuant to the Loan Documents, on or as of May 1, 2012 (the "Maturity Date").

18. As a result of the foregoing defaults, the Bank deemed itself insecure, accelerated the full amount of the Obligation, to the extent necessary and required, and demanded payment of the same. The Bank hereby again demands payment of the full amounts due under the Obligation. A copy of the demand letter dated January 8, 2014 (the "Demand Letter") is attached hereto as Exhibit "P" and is incorporated herein by reference.

19. As of April 2, 2014, the Obligations were in the aggregate amount of $1,256,946.26, inclusive of principal and accrued interest itemized as follows:

### First Obligation

| | |
|---|---:|
| Principal: | $ 845,251.10 |
| Interest (as of 4/02/14 at $140.88 per diem): | $ 96,970.03 |
| Late Fees: | $ 8,330.10 |
| Subtotal: | $ 950,551.13 |

### Second Obligation

| | |
|---|---:|
| Principal: | $ 94,581.18 |
| Interest (as of 4/02/14 at $15.76 per diem): | $ 10,838.67 |
| Late Fees: | $ 119.26 |
| Subtotal: | $ 105,539.11 |

### Third Obligation

| | |
|---|---:|
| Principal: | $ 172,873.64 |
| Interest (as of 4/02/14 at $28.81 per diem): | $ 18,732.41 |
| Late Fees: | $ 9,249.97 |
| Subtotal: | $ 200,856.02 |
| **TOTAL AMOUNT DUE:** | **$ 1,256,946.26** |

Additionally, interest continues to accrue on the payoff amount of the Obligations at the rate provided in the Loan Documents.

20. Similarly, the Bank has a contractual right to recover additional accruing fees pursuant to the terms of the Loan Documents and all such rights are reserved to the extent not expressly waived.

21. The Obligations additionally includes the Obligors' liability for reimbursement of the Bank's additional attorneys' fees, court costs, and related compensable expenses incurred in prosecuting and enforcing its rights and remedies pursuant to the Loan Documents, including attorneys' fees and costs paid by the Bank to its counsel as compensation and reimbursement for its efforts to enforce the Loan Documents herein.

22. The validity, enforceability, and status of the Obligations have never been questioned, and cannot reasonably be questioned at this time.

23. The Bank owns and holds the original Loan Documents to the extent required by law to bring this cause of action, as successor-in-interest by merger to RBC Bank (USA) f/k/a RBC Centura Bank. A copy of the "Certificate of Name Change" from RBC Centura Bank to RBC Bank (USA), and the "Certificate of Merger" evidencing the merger between PNC Bank, N.A. and RBC Bank (USA) are attached hereto as Exhibits "Q" and "R" respectively.

## COUNT I: SUIT ON FIRST LOAN DOCUMENTS

24. This is an action for damages against M.D.K. resulting from its default pursuant to the First Loan Documents.

25. The Bank realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as though fully set forth herein.

26. The entire aggregate amount of the First Obligation remains due and owing by M.D.K. to the Bank.

WHEREFORE, the Bank requests judgment for damages against M.D.K. in the full amount of the First Obligation, together with interest, court costs, and reasonable attorneys' fees recoverable pursuant to the First Loan Documents.

## COUNT II:  SUIT ON FIRST OBLIGATION GUARANTIES

27. This is an action for damages against the Guarantors resulting from their default pursuant to the terms of the Guaranty and Forbearance Agreement and all subsequent reaffirmations of the same.

28. Pursuant to the Guaranty and Forbearance Agreement, the Guarantors absolutely, unconditionally, and unequivocally guaranteed, among other things, the payment of principal and interest, costs of collection and all other amounts due under the First Loan Documents.

29. The Bank realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as though fully set forth herein.

30. The entire aggregate amount of the First Obligation remains due and owing by the Guarantors to the Bank.

WHEREFORE, the Bank requests judgment for damages against the Guarantors in the full amount of the First Obligation, together with interest, court costs, and reasonable attorneys' fees recoverable pursuant to the Common and First Loan Documents.

## COUNT III:  SUIT ON SECOND LOAN DOCUMENTS

31. This is an action for damages against D.D.S. resulting from its default pursuant to the Second Loan Documents.

32. The Bank realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as though fully set forth herein.

33. The entire aggregate amount of the Second Obligation remains due and owing by D.D.S. to the Bank.

WHEREFORE, the Bank requests judgment for damages against D.D.S. in the full amount of the Second Obligation, together with interest, court costs, and reasonable attorneys' fees recoverable pursuant to the Second Loan Documents.

### COUNT IV: SUIT ON SECOND OBLIGATION GUARANTIES

34. This is an action for damages against Guarantors resulting from their default pursuant to the terms of the Guaranty and Forbearance Agreement and all subsequent reaffirmations of the same.

35. Pursuant to the Guaranty and Forbearance Agreement, the Guarantors absolutely, unconditionally, and unequivocally guaranteed, among other things, the payment of principal and interest, costs of collection and all other amounts due under the Second Loan Documents.

36. The Bank realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as though fully set forth herein.

37. The entire aggregate amount of the Second Obligation remains due and owing by the Guarantors to the Bank.

WHEREFORE, the Bank requests judgment for damages against the Guarantors in the full amount of the Second Obligation, together with interest, court costs, and reasonable attorneys' fees recoverable pursuant to the Common and Second Loan Documents.

### COUNT V: SUIT ON THIRD LOAN DOCUMENTS

38. This is an action for damages against D.D.S. resulting from its default pursuant to the Third Loan Documents.

39. The Bank realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as though fully set forth herein.

40. The entire aggregate amount of the Third Obligation remains due and owing by D.D.S. to the Bank.

WHEREFORE, the Bank requests judgment for damages against D.D.S. in the full amount of the Third Obligation, together with interest, court costs, and reasonable attorneys' fees recoverable pursuant to the Third Loan Documents.

## COUNT VI: SUIT ON THIRD OBLIGATION GUARANTIES

41. This is an action for damages against the Guarantors resulting from their default pursuant to the terms of the Guaranty and Forbearance Agreement and all subsequent reaffirmations of the same.

42. Pursuant to the Guaranty and Forbearance Agreement, the Guarantors absolutely, unconditionally, and unequivocally guaranteed, among other things, the payment of principal and interest, costs of collection and all other amounts due under the Third Loan Documents.

43. The Bank realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as though fully set forth herein.

44. The entire aggregate amount of the Third Obligation remains due and owing by Baylis to the Bank.

WHEREFORE, the Bank requests judgment for damages against the Guarantors in the full amount of the Third Obligation, together with interest, court costs, and reasonable attorneys' fees recoverable pursuant to the Common and Third Loan Documents.

## COUNT VII: FORECLOSURE OF THE MORTGAGED PROPERTY

45. This is an action to foreclose the Bank's mortgage lien upon the Mortgaged Property owned by the Obligors, located in the Middle District of Florida, Orange County, Florida.

46. The Bank realleges and incorporates paragraphs 1 through 23 of this Complaint as though fully set forth herein.

47. The Obligors may claim some right, title, or interest in some or all of the Mortgaged Property; however, any such right, title, or interest is junior and inferior to that of the Bank.

48. The Association may claim some right, title, or interest in some or all of the Mortgaged Property by virtue of liens against the Borrower and declaration recorded in the Public Records of Orange County, Florida; however, any such right, title, or interest is junior and inferior to that of the Bank.

WHEREFORE, the Bank requests judgment against the Obligors and the Association, foreclosing its mortgage lien upon the Mortgaged Property pursuant to the Loan Documents, and if the proceeds are insufficient to fully satisfy the Obligations, a deficiency judgment and such other relief and further relief as the Court deems just and proper.

## COUNT VIII: FORECLOSURE OF SECURITY INTERESTS AND LIENS IN SECURED PROPERTY

49. This is an action to foreclose the Bank's security interest and liens in the Secured Property, owned by the Obligors, and located in the Middle District of Florida, in Orange County, Florida.

50. The Bank realleges and reincorporates by reference paragraphs 1 through 23 of this Complaint as though fully set forth herein.

51. The Obligations are secured <u>inter alia</u> by the Secured Property, which should be foreclosed to satisfy the full amount of the Obligors' indebtedness to the Bank.

52. The Obligors may claim some right, title, or interest in and to the Secured Property, but any such interest is subordinate and inferior to that of the Bank.

WHEREFORE, the Bank requests judgment against the Obligors, foreclosing its security interest and liens in the Secured Property, pursuant to the Loan Documents, evidencing the Obligations, and any other claims of lien, and if proceeds of such are insufficient to fully satisfy the Obligations, a deficiency judgment against the Obligors, and any other relief the Court deems

proper.

## VERIFICATION

STATE OF FLORIDA
COUNTY OF Palm Beach

I, David Savage, a Vice President for PNC Bank, N.A., hereby declare under penalty of perjury under the laws of the United States that the information contained in the Verified Complaint is true and correct, provided that this declaration does not extend to paragraphs that contain analysis of Florida law governing the merits of the Verified Complaint about which I am unqualified to opine because I am not a member of the Florida Bar.

_____
DAVID SAVAGE

STATE OF FLORIDA
COUNTY OF Palm Beach

The foregoing instrument was acknowledged before me, this 10th day of April, 2014, by David Savage, a Vice President for PNC Bank, N.A. He is personally known to me.

_____
Notary Public
My Commission Expires:

Dated this 10th day of April, 2014.

JOHN J. VIADERO
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE219369
Expires 7/30/2016

JOHN A. ANTHONY, ESQUIRE
Florida Bar No. 0731013
janthony@anthonyandpartners.com
**ALLISON C. DOUCETTE, ESQUIRE**
Florida Bar No. 0085577
adoucette@anthonyandpartners.com
**JOHN M. STRATTON, ESQUIRE**
Florida Bar No. 0100403
jstratton@anthonyandpartners.com
Anthony & Partners, LLC
201 N. Franklin Street, Suite 2800
Tampa, Florida 33602
Telephone: 813/273-5616
Telecopier: 813/221-4113
Attorneys for PNC Bank, N.A.

12